_[1DENNIS R. BAGNERIS, SR., Judge.
Appellants, Beatrice Drew, Sheila Simmons, and Ella Johnson, acting on behalf of her minor son, Louis Johnson, appeal the trial court’s judgment granting a Writ of Mandamus directing Desiree Charbon-net, the Orleans Parish Recorder of Mortgages, to erase appellants’ judgments against appellee, the Housing Authority of New Orleans (“HANO”). We affirm.
On June 30, 1995, Johnson obtained a judgment against HANO in the amount of $16,734.54. On December 17, 1996, Drew obtained a consent judgment against HANO in the amount of $42,052.01. Thereafter, on January 3, 1997, Simmons obtained a consent judgment against HANO in the amount of $65,000.00. Johnson, Drew, and Simmons recorded their judgments against HANO in the mortgage records of Orleans Parish on September 26, 1997, February 3, 1997, and., January 7, 1998, respectively.
On March 30, 1999, HANO filed a Petition for Writ of Mandamus directing Ms. *957 Desiree Charbonnet to cancel and erase the recordation of the judgments in favor of Johnson, Drew, and Simmons. Thereafter, on December 1, 1999, the trial court granted HANO’s Petition and ordered the judgments of Johnson, Drew, and 12Simmons be erased from the mortgage records in Orleans Parish. Appellants appeal this final judgment.
On appeal, appellants argue that the trial court erred when it ordered their money judgments erased from the records of the Recorder of Mortgages for the Parish of New Orleans, State of Louisiana. Appellants further contend that the trial court erred by holding that the recording of a money judgment against a public entity judgment debtor was an execution of that judgment. However, we fail to find any language in the record that the trial court ruled that the recordation of a money judgment against HANO was a step in the execution of that judgment. Rather, the trial judge stated at the hearing that she thought “the intent of the law that’s on the book is such that your [appellants’] judgment shouldn’t exist and should not have been filed.... ” Thus, the sole issue we find to be before this court today is whether a judgment creditor is prohibited from recording a money judgment-an act which creates a judicial mortgage and affects all present and future property of the judgment debtor in each parish in which the judgment is recorded from the date of recordation-against HANO. See La. C.C. Arts. 3300, 3302, and 3303.[1]
The relevant laws relating to judgments against HANO are as follows: The Louisiana Constitution, Article XII Section 10(c)
... the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability andjjthe kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigi-ble, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.
La. R.S. 13:5109(B)(2)
Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the *958 suit was filed against a political subdivision. (Emphasis added)
La. R.S. 40:503 (in effect until August 14,1997)
No execution or other judicial process shall issue against the immovable or movable property of an authority and no judgment shall be a charge upon it. However, provisions of this Section do not apply to or limit the right of an obligee to foreclose or otherwise enforce any mortgage given by an authority. (Emphasis added)
La. R.S. 40:405 (replaced La. R.S. 40:503; effective on August 15,1997)
Except to the extent a local housing authority or its subsidiaries may otherwise expressly agree, all real and personal property of a local housing authority and its subsidiaries shall be exempt from execution, levy, and sale for the payment of debt or otherwise pursuant to any judicial or other process. (Emphasis added)
These laws provide that a judgment creditor’s recovery is limited against a housing authority in order to avoid encumbering public property. |4Further, the language of La. R.S. 40:503[2] stating that “no judgment shall be a charge upon it” evidence the legislature’s intent to prohibit a creditor from recording a money judgment.[3] However, the law is unclear as to whether the legislature, in 1997, intended for a judgment creditor to be prohibited from recording a money judgment against HANO. In 1997, the legislature omitted the words “no judgment shall be a charge upon it” and added the language “all real property of a local housing authority ... shall be exempt from execution, levy, and sale for the payment of debt or otherwise pursuant to any judicial or other process.” (Emphasis added) Thus, it is necessary for us to review the legislative history to determine if, in 1997, the legislature intended to continue the prohibition of recording money judgments against HANO.
William Guste, on behalf of HANO, and Terrance Duvernay, on behalf of the Louisiana Housing Council, discussed Senate Bill 1548 [which became act 1188-the new La. R.S. 40:405] with the Louisiana Senate during a meeting for the Commerce and Consumer Protection Committee.[4] Mr. Guste stated:
... this bill rewrites Act 275 of 1936 [old La. R.S. 40:503]. Most of the bill is just a rewrite of law that presently exists. This bill brings a mixture to public housing. Under present public housing law, only people of low income can be in a public housing development. This bill will allow people of mixed income, low and moderate; mixed financing, both private and public money; mixed ownership; and mixed uses of the development.
Mr. Duvernay stated that “HUD is starting to cut back dramatically on funding to public housing authorities. In order to provide affordable housing to people in | Bneed in Louisiana, changes must be made to allow these authorities to support the private sector activities.”
Mr. Guste and Mr. Duvernay also discussed Bill 1548 with the House Commit *959 tee on Municipal, Parochial and Cultural Affairs.[5] Mr. Guste re-iterated that “the basic and substantive changes are few” and that the “law would allow housing authorities to rent to persons of low and moderate or better income (mixed income).” Mr. Duvernay stated that because of this bill “housing will be produced and if authorities are not allowed to produce this housing, affordable housing will cease to exist.”
The legislative history of Act 1188 leads us to believe that the legislature merely intended to encourage the privatization of public housing-not to thwart privatization efforts by encumbering the property of a local housing authority. As the trial court correctly stated during the hearing on this matter:
... these judgments start to prevent a governmental body from functioning and it’s clear from the statutes that were enacted that was not the intent. That the intent was not to have taxpayers to be able to come in and seize public property to the extent that it’s not able to be used at the public’s benefit.
Accordingly, we find that the judicial act of recording appellants’ money judgments, which create judicial mortgages over HANO’s property, will detrimentally impact the legislature’s attempt toward privatizing public housing. Also worth noting is the fact that appellants’ judgments against HANO are | ^effective even without being recorded in the mortgage office. See La. R.S. 9:2756.[6]
For these reasons, we find that the trial court was correct in granting HANO’s Petition for Writ of Mandamus and ordering the judgments of Drew, Simmons, and Johnson be erased from the mortgage records in Orleans Parish.

AFFIRMED.

. La. C.C. Art. 3300 states "[a] judicial mortgage is created by filing a judgment with the recorder of mortgages.”
La. C.C. Art. 3302 states ''[j]udicial and legal mortgages burden all the property of the obligor that is made susceptible of mortgage .... or thaL is expressly made subject to judicial or legal mortgage by other law.”
La. C.C. Art. 3303 states ‘‘[jjuclicial and legal mortgages are general mortgages. They are established over property that the obligor owns when the mortgage is created and over future property of the obligor when he acquires it.”

.La. R.S. 40:503 was in effect when the appellants' judgments were rendered, and when both appellants Drew and Simmons recorded their judgments. Appellant Johnson's judgment was recorded when the new La. R.S. 40:405 was in effect.

. Appellant Drew acknowledges in her brief that La. R.S. 40:503 prohibited a creditor from recording a judicial mortgage against a local housing authority.

. The meeting for the Commerce and Consumer Protection Committee was held on Wednesday, April 30, 1997.

. The meeting for the House Committee on Municipal, Parochial and Cultural Affairs was on May 16, 1997.

. La. R.S. 9:2756 provides: “All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.. ..”